UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK K.,[1]

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

24-CV-1033-LJV
DECISION & ORDER

---

On October 24, 2024, the plaintiff, Frank K. ("Frank"), brought this action under

the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On February 21, 2025, Frank moved for judgment on the pleadings,

Docket Item 10; on April 14, 2025, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 14; and on April 28, 2025, Frank replied,

Docket Item 15.

---

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Frank applied for Supplemental Security Income ("SSI"), which is paid to a
person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Frank's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.")  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

On June 28, 2024, the ALJ found that Frank "was not disabled prior to October 6, 2023," the date Frank's age category changed.  *See* Docket Item 4 at 197–98.  But the ALJ found that beginning on October 6, 2023, there were no jobs that Frank could perform and that he therefore "became disabled on that date and . . . continued to be disabled through the date of th[e] decision."  *See id*. at 197.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  *See id.* at 184–86.

At step one, the ALJ found that Frank had not engaged in substantial gainful activity since October 26, 2018, the date his application was filed.  *Id.* at 186.  At step two, the ALJ found that Frank suffered from five severe, medically determinable impairments: "chronic heart failure; hypertension; asthma; right knee dysfunction; and opioid use disorder."  *Id.*

At step three, the ALJ found that Frank's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 187–89.  More specifically, the ALJ found

3

that Frank's impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 3.02 (pulmonary fibrosis and pneumoconiosis), or 4.02 (chronic heart failure).  *Id.*

The ALJ then found that Frank had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C[.]F[.]R[. §] 416.967(a)" except that:

> [Frank] can occasionally climb stairs and stoop, but he cannot climb ladders, ropes, or scaffolds, nor can he work with dangerous equipment.  [He] should work indoors, and he can be exposed to normal indoor respiratory and temperature[ conditions] but [can have] no exposure to extremes of heat, cold, wetness, or concentrated respiratory irritants.  [He] can understand, remember[,] and carry[ ]out simple instructions.  [He] should work with objects and not people.

*Id.* at 189.

At step four, the ALJ found that Frank had no past relevant work.  *Id.* at 196.  But given Frank's age, education, and RFC, the ALJ found at step five that before October 6, 2023, Frank could perform substantial gainful activity as a document preparer, table worker, or addresser.  *Id.* at 196–97; *see Dictionary of Occupational Titles* 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 739.687-182, 1991 WL 680217 (Jan. 1, 2016); *id.* at 209.587-010, 1991 WL 680217 (Jan. 1, 2016).  The ALJ therefore found that Frank was not disabled before October 6, 2023, but that he has been disabled since then. *See* Docket Item 4 at 197.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.    ALLEGATIONS

Frank raises only one issue: that the ALJ improperly evaluated the opinions of Amy Quinlan, NP.  *See* Docket Item 10-1 at 21–25.  More specifically, Frank argues that the ALJ "failed to properly evaluate and discuss the supportability and consistency factors[] and improperly discounted the opinions for being in checkbox format."  *Id.* at 23.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

For claims filed on or after March 27, 2017, such as Frank's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding[s], including those from [a claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or] she finds the medical opinions in the case record."  *Id.*

The regulations list five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  An ALJ is required to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors" and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors."  *Id.* § 404.1520c(b)(2).

5

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(2).

On August 3, 2023, NP Quinlan completed a cardiac RFC questionnaire on Frank's behalf. *See* Docket Item 5 at 43–48. She opined that Frank could stand for ten minutes and sit for twenty minutes at a time, needed to elevate his legs for 50% of the workday, and required a twenty-to-thirty-minute rest break every one or two hours. *Id.* at 45–46. She also opined that Frank could lift ten pounds occasionally, twenty pounds rarely, and could never lift fifty pounds or more. *Id.* at 46. NP Quinlan concluded that Frank's symptoms would "[o]ften" interfere with his attention and concentration and that he would miss work "[a]bout two days per month." *Id.* at 44, 47.

A few months later, on February 27, 2024, NP Quinlan completed a treating medical source statement. *See* Docket Item 6 at 412–14. In that statement, she explained that Frank had "significant lower extremity edema," requiring him to "elevate his legs to avoid blood pooling" and to "move frequently . . . to promote circulation." *Id.* at 413–14. NP Quinlan also clarified her earlier opinion, opining that Frank could "likely sit for longer than [twenty] minutes, [but] given persistent lower extremity edema, [she] would not recommend sitting for periods [of more than one] hour." *Id.* at 413.

The ALJ found NP Quinlan's opinions unpersuasive.  *See* Docket Item 4 at 195. In doing so, the ALJ first addressed how well NP Quinlan supported her opinions.  The ALJ noted that "there [wa]s no evidence that [NP Quinlan was] familiar with other evidence in the record or underst[ood the] disability program."  *Id.*  And the ALJ found that the opinions "lack[ed] the clinical correlation to support the opinions given on the checkbox forms."  *Id.*

The ALJ then addressed whether NP Quinlan's opinions were consistent with other evidence in the record.  For example, the ALJ found that NP Quinlan's opinions were "not supported by the findings in longitudinal treatment notes."  *Id.*  In particular, the ALJ noted that "treatment notes from [Tajinder Singh, M.D.,] from the University of Rochester, [Ahmed Shah, M.D.], and from UBMD[,] . . . described [Frank's] conditions . . . in contrast to [NP Quinlan's] findings."  *Id.*

Likewise, the ALJ found NP Quinlan's opinions to be inconsistent with the hearing testimony of Stephen Stuart, M.D., a consulting cardiologist.  *Id.*  And, in fact, Dr. Stuart explicitly disagreed with several parts of NP Quinlan's opinions.  For example, in direct contrast to NP Quinlan's opinions, Dr. Stuart testified that Frank would not need "to raise his legs at a 90-degree angle for 50 percent of the time" and instead could control his leg swelling with "compression, stocking[s], diuretics, . . . [and] exercises." *Id.* at 244.  Along the same lines, Dr. Stuart testified that there was "no evidence" that Frank could sit for only twenty minutes and stand for only ten minutes at a time.  *Id.*

In other words, the ALJ did what the regulations required of her, concluding that NP Quinlan's opinions were unsupported, inconsistent, and therefore not persuasive. *See id.* at 195; *Spottswood*, 2024 WL 89635, at *2.

Frank takes issue with the ALJ's weighing of the evidence to reach that conclusion—that is, crediting Dr. Stuart's testimony and discounting NP Quinlan's opinions. *See* Docket Item 10-1 at 25. In this regard, Frank suggests that the ALJ should have discounted Dr. Stuart's testimony because Dr. Stuart did not examine Frank and only reviewed Frank's medical records. *See id.* But the Second Circuit has long recognized that an ALJ may credit the opinion of physicians who only review records and do not actually examine claimants. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."); *see also Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record."). And the decision of which opinions to credit was squarely within the province of the ALJ. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

What is more, it is not the function of this Court to re-weigh the evidence or to determine *de novo* whether Frank is disabled. *See Schaal v. Apfel*, 134 F.2d 496, 501 (2d Cir. 1998). Rather, so long as the ALJ's decision provides "an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," there is no error. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2019). And that is precisely the case here.

Frank argues that the ALJ "improperly discounted [NP Quinlan's opinions] for being in checkbox format." Docket Item 10-1 at 23. And if that were all the ALJ did—if the ALJ rejected the opinions based solely on their format—then Frank's argument may well have had some merit. *See Linda F. v. Comm'r of Soc. Sec.*, 2024 WL 383466, at

*4 (W.D.N.Y. Jan. 31, 2024) ("[I]t was improper for the ALJ to discount the opinion because of the check-box format, particularly when supported by additional explanation and records.").  But the ALJ did more than that here:  The ALJ noted that NP Quinlan's opinions were inconsistent with the opinions of multiple physicians, with Dr. Stuart's testimony, and with other evidence in the record.  *See* Docket Item 4 at 195.  And the ALJ found that there was no "clinical correlation to support" NP Quinlan's opinions.  *Id.* So rather than rejecting NP Quinlan's opinions based simply on their check-the-box form, the ALJ considered the regulatory factors and discounted NP Quinlan's opinions accordingly.  *See id.*

Finally, it is worth noting that the RFC crafted by the ALJ explicitly incorporated the limitations about which several physicians opined.  For example, D. Miller, D.O., and Gary Ehlert, M.D., both state agency medical consultants, opined that Frank should avoid exposure to extreme cold, heat, wetness, humidity, and other respiratory irritants, and the RFC provided that Frank should not be exposed "to extremes of heat, cold, wetness, or concentrated respiratory irritants."  *Compare* Docket Item 3 at 79–80 (Dr. Miller), 90 (Dr. Ehlert), *with* Docket Item 4 at 189.  Likewise, the RFC addressed other limitations that Drs. Miller and Ehlert found by restricting Frank to only "occasionally climb[ing] stairs and stoop[ing]."  Docket Item 4 at 189.

In sum, the ALJ appropriately reviewed the supportability and consistency of NP Quinlan's opinions in light of NP Quinlan's own records and the other evidence in the record.  *See Balsamo*, 142 F.3d at 81.  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did

just that, the ALJ's RFC determination was supported by substantial evidence.  This Court will not second-guess it.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Frank's motion for judgment on the pleadings, Docket Item 10, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 14, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:      July 1, 2026
            Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE